UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NICOLE BAILEY,

          Plaintiff,

       v.                             23-CV-1083-LJV
                                       DECISION & ORDER

CHEEKTOWAGA-MARYVALE UNION
FREE SCHOOL DISTRICT,

          Defendant.
_____

On October 13, 2023, the plaintiff, Nicole Bailey, commenced this action against her former employer, the Cheektowaga-Maryvale Union Free School District (the "District"). Docket Item 1. She asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), the Family and Medical Leave Act of 1993 ("FMLA"), and the New York State Human Rights Law ("NYSHRL"). Id. On January 25, 2024, the District moved to dismiss Bailey's Title VII claims, ADA claims, NYSHRL claims, and punitive damages claim, Docket Item 5; on April 10, 2024, Bailey responded, Docket Item 10; and on May 1, 2024, the District replied, Docket Item 13.

For the reasons that follow, the District's motion to dismiss is granted.

**BACKGROUND**[1]

On November 19, 2018, the District hired Bailey "as the Principal of the Primary School."  Docket Item 1 at ¶ 12.  "During her second school year with the District," Bailey began to encounter issues with her supervisors.  *Id.* at ¶ 14; *see generally id.* at ¶¶ 12-95.  Those issues eventually culminated in Bailey's termination on June 30, 2021.  *Id.* at ¶ 82.

Bailey complains primarily about her treatment by District Superintendent Joseph D'Angelo, who harassed her and discriminated against her based on her gender.  *See id.* at ¶ 14.  For example, D'Angelo referred to Bailey and another female principal as "the girls" and offered the District's male principals more favorable working conditions, such as the ability to work from home "during the remote phase" of the COVID-19 pandemic.  *Id.* at ¶¶ 22-23, 25.

In early 2021, Bailey's issues with the District worsened when she had "emergency surgery" to treat "acute appendicitis."  *Id.* at ¶ 33.  After her surgery, Bailey took FMLA leave from January 19 to February 1, 2021.  *See id.* at ¶ 37.  D'Angelo "did not provide building coverage for [] Bailey while she was out," however, and the District

---

[1] On a motion to dismiss, the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  In deciding the motion, the court may consider any written documents that are attached to the complaint, incorporated by reference, or integral to it.  *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).

The following facts are taken from the complaint, Docket Item 1, and documents integral to the complaint, including the Equal Employment Opportunity Commission ("EEOC") Notice of Rights, Docket Item 1-1, and the New York State Division of Human Rights ("DHR") Determination and Order, Docket Item 5-2.

contacted her "daily"—sending her "meeting invitations, emails, [and] text messages" and calling her on the phone. *Id.* at ¶ 42. "Because of this, [] Bailey continued to work full-time from home during her surgery recovery while out on FMLA [leave]." *Id.* (emphasis omitted). Nevertheless, the District "deducted" Bailey's leave time from her "accrued sick time." *Id.* at ¶ 43.

After Bailey returned to work in early February 2021, the negative treatment by her supervisors "intensified" even more. *Id.* at ¶ 44; *see id.* at ¶¶ 46-47. For example, Bailey was "reprimand[ed]" for her failure to attend a "virtual dance party" even though she did not receive "timely . . . notice of the event." *Id.* at ¶¶ 48-50.

On March 1, 2021, Bailey filed a "formal complaint" with Board of Education President Cindy Strong alleging that D'Angelo had discriminated against her based on gender and disability. *Id.* at ¶¶ 54-55. A few days later, Bailey "received a counseling memo" from Assistant Superintendent of Curriculum and Instruction Elizabeth Giangreco that "reprimanded" her for her performance and "threatened 'further administrative action.'" *Id.* at ¶¶ 57-58 (emphasis omitted).

On March 11, 2021, Bailey "met with the District's lawyer assigned to investigate her discrimination complaint." *Id.* at ¶ 62. In the following weeks, Giangreco began to "critiqu[e] and micro-manag[e]" Bailey's performance. *Id.* at ¶ 63. Giangreco also told another colleague "that she was not even sure if [] Bailey would still have a job after filing [the] complaint." *Id.*

As a result, on March 31, 2021, Bailey raised a retaliation claim with the District investigator. *Id.* at ¶ 65. A few weeks later, Board President Strong told Bailey "that her

complaint of sex and disability discrimination was unsubstantiated." *Id.* at ¶ 69.  But "the investigation into [] Bailey's complaint of retaliation continued."  *Id.*

On May 14, 2021, Bailey received two letters from D'Angelo.  *Id.* at ¶ 71.  The first letter put Bailey "on administrative leave effectively immediately."  *Id.*  The second letter stated that "D'Angelo would be recommending [Bailey's] termination to the Board of Education."  *Id.*  "Bailey received no reason for her threatened termination and immediate forced placement of leave," *id.* at ¶ 72, so a few days later, she "request[ed] a written explanation," *id.* at ¶ 73.  She then received a letter attributing the disciplinary actions to her "deficient administrative judgment/capacity, deficient instructional leadership, insufficient building management skills, and deteriorating building culture."  *Id.* at ¶ 74.  The letter did not "provide any specific examples" of those issues, however.  *Id.*

On June 4, 2021, Bailey sent a "detailed rebuttal" to the Board of Education, asserting that she was being retaliated against for complaining about discrimination.  *Id.* at ¶¶ 76-77.  Nevertheless, on June 30, 2021, the District terminated Bailey's employment.  *Id.* at ¶ 82.

On December 30, 2021, Bailey filed a complaint against the District with the DHR.  *See* Docket Item 5-2.  On June 16, 2023, the DHR issued a determination and order finding no probable cause to believe that the District discriminated or retaliated against Bailey.  *Id.*  Bailey also filed a charge with the EEOC.  *See* Docket Item 1-1.  On July 10, 2023, the EEOC informed Bailey that it would not "proceed further with its investigation" and that Bailey must commence any lawsuit related to the charge within 90 days of her "receipt of this notice."  *Id.* (emphasis omitted).  The notice also informed

Bailey that she "should keep a record of the date [she] received [the] notice" and that her "right to sue based on [the underlying] charge will be lost if [she did] not file a lawsuit in court within 90 days." *Id.*

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.*, 988 F.3d 127, 131-32 (2d Cir. 2021) (quoting *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015)).

## DISCUSSION

**I.     TITLE VII AND ADA CLAIMS**

The District argues that Bailey's Title VII and ADA claims must be dismissed because the complaint was filed more than 90 days after the issuance of the EEOC right to sue letter. Docket Item 5-1 at 8-9. This Court agrees.

5

A federal complaint asserting Title VII and ADA claims must be filed within 90 days of the plaintiff's receipt of an EEOC right to sue letter.  *See* 42 U.S.C. §§ 12117(a), 2000e-5(f)(1).  The 90-day period is measured in calendar days, *Carpenter v. City of New York*, 2011 WL 2118599, at *2 (E.D.N.Y. May 25, 2011), and the deadline is strict, *see Manley v. N.Y.C. Police Dep't*, 2005 WL 2664220, at *3-5 (E.D.N.Y. Oct. 19, 2005) (dismissing *pro se* plaintiff's claims as untimely where plaintiff filed complaint 91 days after receiving right to sue letter).  In fact, "in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day."  *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984) (citation omitted).

A court presumes that a plaintiff received a right to sue letter three days after it was mailed.  *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525-26 (2d Cir. 1996).  Similarly, courts presume that the EEOC mailed the right to sue letter on the letter's date.  *See id.*

Bailey's EEOC right to sue letter is dated July 10, 2023.  Docket Item 1-1.  Bailey makes vague reference to the "date of the letter" and its "postmark," *see* Docket Item 10 at 6, but she has not pleaded that she received the letter on a specific date, *see* Docket Item 1.  The Court therefore presumes that the letter was mailed on Monday, July 10, 2023, and that Bailey received it three days later, on Thursday, July 13, 2023.  *See Sherlock*, 84 F.3d at 525-26.  Ninety days from Thursday, July 13, 2023, is Wednesday, October 11, 2023.  Bailey did not commence this action until two days after that—Friday, October 13, 2023.  Docket Item 1.  Her ADA and Title VII claims therefore are untimely.

Bailey says that her ADA and Title VII claims are timely because she filed her DHR complaint on March 4, 2020,[2] and "the look back period is three hundred (300)

---

[2] It is unclear why Bailey says she filed her DHR complaint on March 4, 2020, when the DHR determination itself says that Bailey filed her complaint on December 30, 2021, *see* Docket Item 5-2, and nearly all the events about which Bailey complains occurred *after* March 2020, *see generally* Docket Item 1.

In addition to the puzzling assertion about the date of her DHR filing, Bailey's response includes several other inaccuracies that suggest her counsel is not taking the appropriate care to ensure the accuracy and quality of counsel's filings. For example, the very first sentence of Bailey's response says that the District "acted to remove [her] complaint from state court . . . here to federal court." Docket Item 10 at 6. But that is not so: Bailey commenced this action by filing her complaint in the United States District Court for the Western District of New York. *See* Docket Item 1.

Even more concerning is the fact that Bailey's counsel—on Bailey's behalf—spends nearly seven pages of the response addressing an argument that the District did not make. *See* Docket Item 10 at 13-20 (arguing that the complaint should not be dismissed for failure to state a prima facie case of discrimination); *see also* Docket Item 13 at 2 ("[I]t is unclear whether many of the arguments contained in the Plaintiff's Memorandum of Law in Opposition are even responsive to the pending motion. In fact, the arguments contained in Part II of Plaintiff's Opposition purport to respond to arguments on legal issues which were not raised by Defendant and must, therefore, be disregarded entirely.").

Worst of all, Bailey's argument on punitive damages is, putting it charitably, gibberish. She starts with the assertion that the District's "reasoning again is flawed regarding punitive damages," and follows that with three-and-a-half paragraphs that do not address—or even mention—punitive damages. Docket Item 10 at 12-13. Four times she cites "N.Y. C.P.L.R. 1983," a nonexistent statute that, as best this Court can infer, may be a very poor attempt to invoke 42 U.S.C. § 1983. *Id.* She then concludes by saying that Bailey "was indeed endangered by the actions of the [D]istrict agents and employees, and therefore the [D]istrict is not immune from possible punitive damages," a non sequitur that follows a page-and-a-half of irrelevancies. *Id.*

The submissions by Bailey's counsel raise a serious question about whether she reads the filings she submits to this Court. And this Court already has warned counsel—in another case—"that such shoddy work will not be tolerated . . . and that she risks sanctions if she repeats such errors." *Caulcrick v. Refresco NA*, 2024 WL 1344766, at *1 n.1 (W.D.N.Y. Mar. 29, 2024). This is counsel's final warning: The next time this Court spots a significant substantive error in her filings, it will order her to show cause why she should not be sanctioned under Federal Rule of Civil Procedure 11.

7

days" from that date.  Docket Item 10 at 7.  Bailey seems to be referring to the 300-day period following a discriminatory act in which a complainant must file an EEOC charge.  *See Richardson v. Hartford Pub. Library*, 404 F. App'x 516, 517 (2d Cir. 2010) (summary order) ("Under Title VII, a plaintiff must file an employment discrimination charge with the EEOC . . . 300 days after an alleged unlawful employment practice occurred." (citation and internal quotation marks omitted)).  But the 300-day period to file an EEOC charge has absolutely nothing to do with the District's timeliness argument, so the date of Bailey's DHR complaint is irrelevant.

Bailey vaguely suggests that she may be entitled to equitable tolling.  Docket Item 10 at 7-8.  But she does not provide any details supporting that suggestion, let alone details demonstrating a "rare and exceptional circumstance[]" that might justify tolling.  *See Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (citation omitted); *see also* Docket Item 10 at 7-8.

Finally, Bailey says that "[t]he instant matter was indeed commenced 90 days from the date of the EEOC letter" and that she "is baffled as to how the [District] calculated 95 days."  Docket Item 10 at 8.  But after double- and triple-checking the math, the Court is not so baffled.  As noted above, three days after the letter's date of June 10, 2023, is July 13, 2023; 90 days after that is Wednesday, October 11, 2023; but Bailey did not commence this action until Friday, October 13, 2023.  So the complaint was filed 95 days after the date of the EEOC letter, and even giving Bailey the benefit of the presumption that she received the letter three days after it was issued, the complaint still is late by two days.

In sum, Bailey's conclusory assertion that she filed the complaint "90 days from the date of the EEOC letter" does not render her Title VII and ADA claims timely, those claims are in fact untimely, and her Title VII and ADA claims therefore are dismissed.

### A.     NYSHRL Claims[3]

#### 1.     Election of Remedies

The NYSHRL provides that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person had filed a complaint hereunder or with any local commission on human rights."  N.Y. Exec. Law § 297(9).  Accordingly, a plaintiff can choose between litigating her NYSHRL claim in court or administratively, and NYSHRL claims, "once brought before the [DHR], may not be brought again as a plenary action in another court."[4]  *Jiles v. Rochester Genesee Reg'l Transp. Auth.*, 317 F. Supp. 3d 695, 700 (W.D.N.Y. 2018) (quoting *York v. Ass'n of the N.Y.C. Bar*, 286 F.3d 122, 127 (2d Cir. 2002)).

The District argues that Bailey's NYSHRL claims "are barred by the [DHR's] no probable cause determination and election of remedies."  Docket Item 5-1 at 9-10.  More specifically, the District argues that because Bailey "has already litigated her

---

[3] Because Bailey's NYSHRL claims are dismissed based on the election of remedies doctrine and timeliness grounds, *infra* at 9-11, the Court need not and does not address the District's argument that those claims also must be dismissed because Bailey "failed to serve a Notice of Claim [as] required by [the] New York Education Law," *see* Docket Item 5-1 at 11-13.

[4] This bar applies only when a DHR charge is dismissed on the merits, not when dismissal is made "on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled."  N.Y. Exec. Law § 297(9).

NYSHRL claims of sex and disability discrimination and retaliation . . . before the [DHR]"—and because the DHR investigated those claims and issued a determination of no probable cause—Bailey is "estopped from relitigating the same issues again before this Court." *Id.*  In response, Bailey does not address the impact of the DHR determination on her NYSHRL claims, *see* Docket Item 10; rather, she asserts only that the DHR determination does not bar her *federal* claims, *see id.* at 8-10.

The District's election of remedies argument is correct, but only as to Bailey's NYSHRL disability discrimination and retaliation claims.  The DHR determination recounts Bailey's allegations relevant to those claims and concludes that there was no probable cause to believe that the District discriminated against her based on disability or retaliated against her for complaining about that discrimination.  Docket Item 5-2.  This Court therefore finds that the DHR dismissed those claims on the merits, and Bailey cannot reassert those claims now.  *See Jiles*, 317 F. Supp. 3d at 700.

But the DHR determination also refers to "allegations that are time[ ]barred [because] they fall outside of the [DHR's] statute of limitations."  Docket Item 5-2.  Those allegations likely were the basis for Bailey's NYSHRL sex discrimination claim because the DHR determination did not specifically address probable cause as to sex discrimination.  *See id.*  And because Bailey's NYSHRL sex discrimination claim apparently was dismissed on timeliness grounds, the election of remedies doctrine does not bar that claim.  *See* N.Y. Exec. Law § 297(9).

      **2.**     **Timeliness**

The District argues that Bailey's NYSHRL claims "are also untimely because they are subject to a one-year statute of limitations."  Docket Item 5-1 at 10-11.  As the

District notes in its reply, Bailey "does not dispute" that argument.  Docket Item 13 at 6; see Docket Item 10.  Regardless, the District clearly is correct that Bailey's remaining NYSHRL claim for sex discrimination is time barred because it accrued, at the latest, on June 30, 2021, the date she was terminated—far more than a year before she commenced this suit on October 13, 2023.  See Carlson v. Geneva City Sch. Dist., 679 F. Supp. 2d 355, 368 (W.D.N.Y. 2010) ("[D]iscrimination claims brought against a school district . . . pursuant to the [NYSHRL] are subject to a one-year statute of limitations." (citing N.Y. Educ. Law § 3813(2-b))).  Bailey's NYSHRL sex discrimination claim therefore is dismissed as untimely.

### B.   Punitive Damages

The District argues that Bailey's claim for punitive damages must be dismissed because "[p]unitive damages are not available against school districts."  Docket Item 5-1 at 13 (citing City of Newport v. Fact Concerts, 453 U.S. 247, 263-71 (1981); Pierce v. Sullivan West Cent. Sch. Dist., 379 F.3d 56, 57 n.3 (2d Cir. 2004); Quackenbush v. Johnson City Sch. Dist., 716 F.2d 141, 148 (2d Cir. 1983)).  Bailey responds that punitive damages are available here, but her argument is a long non sequitur:  She discusses negligence, the Fourteenth Amendment, "sexual molestation," and "corporal punishment" claims.  See Docket Item 10 at 12-13.  It is completely unclear how any of those arguments bear on whether she may seek punitive damages against the District under Title VII, the ADA, the FMLA, or the NYSHRL.  See generally n.2 supra.

The District is correct that a "large body of case law" supports "the proposition that punitive damages are unavailable against school districts" in general.  See Benacquista v. Spratt, 217 F. Supp. 3d 588, 606-07 (N.D.N.Y. 2016) (collecting cases).

But the question of whether a plaintiff can pursue punitive damages against a school district as a general matter is irrelevant: Bailey's only remaining claim is her FMLA claim, and "punitive damages are not available under the FMLA." *See Cooper v. N.Y. State Nurses Ass'n*, 847 F. Supp. 2d 437, 452 (E.D.N.Y. 2012) (alteration and citation omitted); *see also Farrell v. Tri-Cnty. Metro. Transp. Dist.*, 530 F.3d 1023, 1025 (9th Cir. 2008) ("It is well-settled that the FMLA, by its terms, only provides for compensatory damages and not punitive damages." (citation and internal quotation marks omitted)).

Bailey's claim for punitive damages therefore is dismissed.

## **CONCLUSION**

For the reasons stated above, the District's motion to dismiss, Docket Item 5, is GRANTED. Bailey's Title VII, ADA, NYSHRL, and punitive damages claims are dismissed. Her FMLA claim survives. The District shall answer the complaint within 21 days of the date of this order.

SO ORDERED.

Dated:   June 27, 2024
         Buffalo, New York

                                           */s/ Lawrence J. Vilardo*
                                           LAWRENCE J. VILARDO
                                           UNITED STATES DISTRICT JUDGE